UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


RIVERBEND CAPITAL, L.L.C.                    CIVIL ACTION

VERSUS                                       NO: 11-840

CAITLIN, M/V ET AL.                          SECTION: "J"(1)


## ORDER AND REASONS

Before the Court is Defendants' Motion to Compel Arbitration
and Dismiss or Stay the Proceedings. **(Rec. Doc. 57)** Plaintiff,
Riverbend Capital L.L.C ("Riverbend"), has opposed the motion.
(Rec. Doc. 62) Defendants have replied. (Rec. Doc. 63) The Court
took the motion under advisement on April 22, 2013. In their
motion, Defendants seek an order compelling Riverbend to arbitrate
the claims asserted in this litigation based on an arbitration
clause in the parties' Business Loan/Security Agreement. Having
considered the motion, the parties' submissions, the record, and
the applicable law, the Court finds, for reasons expressed more
fully below, that Defendants' motion should be **DENIED.**[1]

---

[1] The Court denied Defendants' motion in open court on Wednesday, May 8,
2013 and now issues its written reasons.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiff, Riverbend, is a limited liability company organized under Louisiana law. Defendants and Plaintiffs in Counterclaim, Royal Street Towing Co., Inc. ("Royal Street Towing"), owner of the *M/V ROYAL STREET*; Faith Towing, Inc. ("Faith Towing"), owner of the *M/V FAITH*; Dooh Towing Co., Inc. ("Dooh Towing"), owner of the *M/V CAITLIN*; and F&S Marine, LLC ("F&S Marine"), are all businesses organized under Louisiana law that are owned and operated by Defendants and Plaintiffs in Counterclaim, Freddie Dufriend and Susan Dufriend (collectively "the Dufriends").[2]

On April 14, 2011, Riverbend filed the instant action asserting *in personam* claims against the Dufriends, Royal Street Towing, Dooh Towing, Faith Towing, and F&S Marine to recover $2,092,400.00 in allegedly unpaid principal, interest, and late fees pursuant to a series of loan agreements and promissory notes that the parties entered into and executed on August 15, 2006 and June 2, 2008.[3] In addition, Riverbend seeks to recover attorneys fees, pursuant to provisions in several of the promissory notes executed by Defendants. In its verified complaint, Riverbend also filed *in rem* claims against the *M/V CAITLIN*, the *M/V FAITH,* and the

---

[2] Susan Dufriend is now deceased and Freddie Dufriend has suffered a stroke since the initiation of this litigation.

[3] Riverbend seeks a judgment for the principal sum of $1,595,000.00, past due interest through April 1, 2011 in the amount of $321,950.00, late charges through February 21, 2011 in the amount of $175,450.00, and continuing interest from April 1, 2011 until paid, additional late charges, all costs of collection and of the instant proceedings, and reasonable attorneys' fees.

*M/V ROYAL STREET*, seeking to foreclose on three First Preferred Ship Mortgages that Freddie Dufriend allegedly executed in his capacity as President of Dooh Towing, Faith Towing, and Royal Street Towing, as security for several of the loans that Riverbend allegedly made to Defendants. On the same day that Riverbend filed its verified complaint, it also filed an ex parte consent motion for issuance of warrant of arrest. (Rec. Doc. 4) The Court granted Riverbend's motion and issued warrants of arrest for all three vessels named in Riverbend's complaint. (Rec. Docs. 8-10) The warrant was executed as to the *M/V ROYAL STREET* on April 15, 2011 and returned unexecuted as to the *CAITLIN M/V* and the *FAITH M/V* on May 4, 2011, as those vessels are located outside of the Eastern District of Louisiana.[4] (Rec. Docs. 21, 22)

Thereafter, Defendants filed an answer and counterclaim on May 5, 2011. (Rec. Doc. 24) In their answer, Defendants asserted as their third defense that Riverbend failed to establish its entitlement to execute on *inter alia*, any of the First Preferred Ship Mortgages in the absence of evidence substantiating Riverbend's alleged disbursement of $1,650,000.00 to Defendants. (Answer, Rec. Doc. 24, p. 6) In their counterclaim against Riverbend, Defendants contended that they are entitled to the cancellation of the collateral mortgages, promissory notes, and/or

---

[4] Riverbend filed similar complaints against those vessels in the Western District of Louisiana and the Southern District of Texas.

3

First Preferred Ship Mortgages held by Riverbend, because, based on the documentation available, the loan proceeds disbursed have been repaid and the debt Defendants allegedly owed to Riverbend has been extinguished. (Counterclaim, Rec. Doc. 24, p. 8, ¶¶ 9-10) Defendants also asserted in their Counterclaim that they are entitled to reimbursement for any and all payments that were made in excess of monies allegedly disbursed by Riverbend. (Counterclaim, Rec. Doc. 24, p. 8, ¶ 10) Riverbend answered Plaintiffs' counterclaim on May 28, 2011. (Rec. Doc. 33)

On May 25, 2011, Defendants filed a motion to vacate the attachment of the *M/V ROYAL STREET* pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Rec. Doc. 26) Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In their motion, Defendants contended that Rule E(4)(f) "gives the defendant or other person with an interest in the property a right to a prompt post-seizure hearing at which it can attack the Complaint, the arrest, the security demanded, or any other alleged deficiency in the pleadings." (Mem. in Supp/ of Mot. to Vacate Attach., Rec. Doc. 26-1, p. 3) In that motion, Defendants argued that "Riverbend cannot prove it disbursed $1,650,000 to the

Defendants," and that "[i]f Riverbend cannot carry its burden . . . the vessels should be released." (Mem. in Supp. of Mot. to Vacate Attach., Rec. Doc. 26-1, p. 4) To support this argument, Defendants relied on the verified complaint in civil action no. 680613, the legal malpractice action that Riverbend, and others, filed in the 24th Judicial District Court for the Parish of Jefferson against *inter alia*, Greg Faia ("Faia") and Security Title LLC ("Security Title") (hereinafter "the Faia malpractice action"). Faia is the attorney who, along with his company Security Title, handled the closings on Riverbend's loans to Defendants. In the Faia malpractice action, Riverbend sought records from the closings that Faia and Security Title handled for Riverbend. Specifically, Defendants argued that Riverbend's allegation in the instant action that the extent of its damages is $1,650,000 is directly contrary to Riverbend's allegations in the Faia malpractice action: (a) that Faia never provided an accounting for the closings he allegedly performed for Riverbend, and (b) that Riverbend could not articulate the full extent of its damages without obtaining an accounting and studying the files that Faia refused to tender to Riverbend. (Mem. in Supp. of Mot. to Vacate Attach., Rec. Doc. 26-1, p. 5) Defendants also argued that Riverbend could not meets its burden of establishing its maritime lien and that Riverbend "wrongfully arrested" the *M/V ROYAL STREET*, because:

> To the extent Riverbend entrusted Security Title with funds earmarked for Defendants' account, the actual

> amount "disbursed" to the Defendants cannot and has not
> been proven without settlement statements and/or records
> of distribution from Security Title - none of which is in
> Riverbend's possession . . . . Riverbend's own documents
> support payments in the amount of $603,743.00. The
> payments made by Defendants far exceed the amount loaned
> to Defendants as evidenced by check stubs in their
> possession drawn to Defendants on Security Title's
> account in the amount of $472,524.93.

(Mem. in Supp. of Mot. to Vacate Attach., Rec. Doc. 26-1, p. 4)

On May 25, 2011, Defendants moved to expedite hearing on their motion to vacate attachment and, on May 26, 2011, requested oral argument (Rec. Doc. 29) The Court granted Defendants' motion to expedite, setting the motion for hearing with oral argument on May 31, 2011. (Rec. Doc. 30) On May 31, 2011, Riverbend filed its opposition to Defendants' motion to vacate attachment, and the Court held a hearing on the motion, after which it denied Defendants' motion to vacate the attachment of the *M/V ROYAL STREET* (Rec. Doc. 35) At the hearing, Riverbend called several live witnesses, including Freddie Dufriend, Michael Dazet, and Eugene Nolan. Defendants' counsel cross-examined those witnesses, in particular, questioning Michael Dazet about, among other things, whether Riverbend had any records of money that Security Title paid to Freddie Dufriend or any documents showing that Security Title actually advanced the funds that Riverbend asked Security Title to advance. (Transcript, Rec. Doc. 39, p. 32) Nevertheless, the Court denied Defendants' motion to vacate attachment, stating:

> [W]hile there may be some confusion about the exact
> advances and payments, I find the testimony of Mr. Dazet

6

and Mr. Nolan credible, together with the spreadsheets from their accountant that they introduced, which seems to support that there is an unpaid principal balance of $1.595 million . . . So it's clear to me that there is still a large unpaid principal balance, and there are preferred mortgages involved . . . So I'm going to deny the motion to vacate. I think plaintiff Riverbend has carried its burden of demonstrating that it is entitled to serve a maritime lien, and the vessel seizure will not be vacated.

(Hr'g Tr., Rec. Doc. 39, p. 55)

Thereafter, Defendants filed two consent motions to continue trial of this case, one on January 3, 2012 and one on August 15, 2012, both of which the Court granted, ultimately continuing the bench trial until May 6, 2013.[5] (Rec. Docs. 42, 44, 49, 50, 52) On April 11, 2013, one day *after* the parties submitted their joint proposed pretrial order and one day *before* the final pretrial conference, which the Court held on April 12, 2013, Defendants filed an untimely motion to compel arbitration[6] based on the following arbitration clause in a Business Loan/Security Agreement ("Security Agreement"), that the parties entered into in connection with several loans that Riverbend made to Defendants:

**Arbitration.** Borrower and Lender agree that any disputes, claims and controversies between them whether individual, joint, or class in nature, arise from this Agreement or otherwise, Including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of

---

[5] In the final pretrial conference, which the Court held on April 12, 2013, the Court continued the trial by two days until Wednesday, May 8, 2013. (Rec. Doc. 60)

[6] The parties' most recent scheduling order provided that all pretrial motions shall be filed and served in sufficient time to permit hearing thereon no later than Mar. 22, 2013. (Rec. Doc. 52)

the American Arbitration Association in effect at the time the claim is filed, upon request of Lender. No act to take or dispose of or foreclose upon any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order, obtaining a writ of attachment or imposition of a receiver, or exercising any rights relating to personal property, Including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes claims, or controversies concerning the lawfulness of reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which may otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.[7]

---

[7] In the Security Agreement, the term "Agreement" is defined as "this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this Business Loan Agreement from time to time." (Security Agmt., Rec. Doc. 2-3, p. 10) The term "Lender" is defined as **RIVERBEND CAPITAL, L.L.C.**, its successors and assigns, and any subsequent holder or holders of Borrower's Loan and Note, or any interest therein." (Security Agmt., Rec. Doc. 2-3, p. 11) The term "Borrower" is defined to mean "any and all signors of the Note and/or this Agreement as listed on page one, including but not limited to ***DOOH TOWING CO., INC., ROYAL STREET TOWING CO., INC., FAITH TOWING, INC., F & S MARINE, L.L.C., FREDDIE JOSEPH DUFRIEND AND/OR SUSAN BECKWITH DUFRIEND*** and includes all co-signers and co-makers signing the Note." (Security Agmt., Rec. Doc. 2-3, p. 10) The term "Note" is defined as "the Note executed by either ***SUSAN BECKWITH DUFRIEND, FREDDIE JOSEPH DUFRIEND, DOOH TOWING CO., INC., ROYAL STREET TOWING CO., INC., FAITH TOWING, INC., OR F & S MARINE, L.L.C.*** in the principal amount of $1,375,000.00 dated August 15, 2006, together with all renewals, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement."

(Rec. Docs. 55-57; Security Agmt., Rec. Doc. 2-3, p. 8)

The Defendants also moved to expedite hearing on the Motion to Compel Arbitration the day before the pretrial conference (Rec. Doc. 58). Nevertheless, in the final pretrial conference, the Court orally granted Defendants' motion to expedite hearing. (Rec. Doc. 60) The Court also established a briefing schedule, ordering Riverbend to file any opposition to Defendants' motion on or before April 19, 2013 and ordering Defendants to file any reply on or before April 22, 2013. Both parties timely filed their opposition and reply, and the Court took the instant motion under advisement on April 22, 2013.

---

(Security Agmt., Rec. Doc. 2-3, p. 11) The term "Collateral" is defined as:

> all property and assets granted as collateral security for a Loan, whether real or personal property, whether, granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

(Security Agmt., Rec. Doc. 2-3, p. 11)

The term "Loan" is defined as "any an all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time."

(Security Agmt., Rec. Doc. 2-3, p. 11)

## PARTIES' ARGUMENTS

### A. Defendants' Arguments

Defendants move for an order dismissing or, alternatively, staying the instant action and compelling Riverbend to arbitrate all of its claims against Defendants based on the arbitration clause in the Security Agreement. First, Defendants argue that the Federal Arbitration Act ("FAA") governs the Arbitration Agreement in this case and mandates that Riverbend's claims be referred to arbitration. In particular, Defendants assert that the FAA applies where there is a contract evidencing a transaction involving interstate commerce, and that the requisite interstate commerce nexus required to trigger the FAA exists in this case, because the Arbitration Agreement at issue is in a contract whereby Riverbend loaned Defendants funds to perform "push boat" services for vessels engaged in maritime commerce. Alternatively, Defendants point out that the Security Agreement calls for the application of the FAA.

Second, Defendants argue that the two-part test used in the Fifth Circuit to determine whether to enforce an arbitration agreement is satisfied in this case. Defendants assert that the first prong of the test — whether the parties agreed to arbitrate the dispute in question — is satisfied in this case for two reasons. First, they assert that the arbitration clause in the Security Agreement constitutes a valid, written arbitration agreement between the parties. Second, they assert that Riverbend's

claims fall within the scope of the arbitration agreement. In particular, Defendants claim that the arbitration agreement, through the use of the words "shall be arbitrated," requires Riverbend to arbitrate any and all "disputes, claims and controversies," although Defendants concede that the arbitration agreement does not impede Riverbend from using the Court to seize its security. According to Defendants, Riverbend's complaint constitutes either a controversy, disagreement, or dispute that is subject to mandatory arbitration. Defendants also assert that the second prong of the test is satisfied, because there is no federal policy or statute that renders any of Riverbend's claims non-arbitrable. Finally, Defendants contend that the Court should dismiss Riverbend's claims or, alternatively, stay the action pending arbitration. Defendants contend, relying on <u>Alford v. Dean</u>, 975 F.2d 1161 (5th Cir. 1992), that Riverbend's claims should be dismissed, because all of Riverbend's claims are subject to arbitration. Alternatively, Defendants request that the Court stay these proceedings pursuant to Section 3 of the FAA and refrain from further action in this suit pending arbitration. Defendants contend that a stay is mandatory in this case, because Riverbend's claims and allegations are subject to arbitration, and the Fifth Circuit has held that a stay is mandatory under Section 3 of the FAA whenever the issues of a case are within the reach of an arbitration agreement.

**B. Riverbend's Opposition**

In its opposition, Riverbend makes two arguments. First, Riverbend argues that the first prong of the test for determining whether to enforce the arbitration agreement — whether the parties agreed to arbitrate the dispute in question — is not met in this case for two reasons. First, Riverbend argues that the parties agreed that arbitration would be at the option of the lender, Riverbend, not the borrowers, and that Riverbend, rather than electing to arbitrate its claims, has engaged in two years of litigation with Defendants' unqualified participation.[8] Second, Riverbend argues, that under the parties' arbitration agreement, arbitration was not mandatory, but was an option available to both parties. In support of this argument, Riverbend relies on the phrase in the arbitration agreement stating "no act to take or dispose of or foreclose upon any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement," which Riverbend contends applies equally to Riverbend and Defendants. Riverbend also contends that the "condition" in the arbitration agreement that "no arbitrator shall have the right or the power to enjoin or restrain any act of any party," supports its interpretation of the arbitration clause as

---

[8] In support of this argument, Riverbend relies on the language of the arbitration agreement providing "Borrower and Lender agree that any disputes, claims and controversies between them . . . shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claims is filed, *upon request of Lender*." (Security Agmt., Rec. Doc. 2-3, p. 8) (emphasis added).

providing both parties with the option to arbitrate, because "the thrust of this condition within the arbitration clause," is that neither lender nor borrowers could object to the other filing suit in state or federal court based on the arbitration clause. In addition, Riverbend asserts, based on a phrase in the arbitration agreement providing that "[n]othing in this agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction," that the arbitration agreement did not prevent either party from filing suit and that Riverbend cannot compel arbitration of Defendants' counterclaim. According to Riverbend, it is clear from the language of the arbitration agreement as a whole, that the parties viewed arbitration as a mutually agreeable option to litigation, not a mandatory provision required of either party before the institution of litigation. Riverbend reaches this conclusion based on its observation that neither party was precluded from bringing suit and that the arbitration agreement did not give the arbitrator authority to enjoin or restrain either party from bringing suit in federal court.

Second, Riverbend argues that Defendants have waived arbitration. In the Fifth Circuit, there is a presumption against finding a waiver of arbitration rights, but the party asserting waiver can overcome the presumption by showing: (1) that the other party has substantially invoked the judicial process and (2) that

permitting arbitration will cause prejudice. <u>In re Apple iPhone 3G</u> <u>and 3GS MMS Mktg and Sales Practices Litig.</u>, 864 F. Supp. 2d 451, 456-57 (E.D. La. 2012). Riverbend argues that Defendants have waived arbitration in this case, because they have: (1) invoked the judicial process, (2) engaged in protracted litigation for the past twenty-four months, and (3) prejudiced Riverbend by fully engaging in the litigation process and delaying in seeking to arbitrate the claims Riverbend has raised in the instant lawsuit. With respect to Defendants' invocation of judicial process, Riverbend asserts that Defendants engaged in overt acts evincing their desire to resolve an arbitrable dispute through litigation rather than arbitration when they: (1) filed a counterclaim against Riverbend, (2) moved to vacate the attachment of the *M/V ROYAL STREET*, (3) requested oral argument on the motion, and (4) participated in a hearing on the motion May 31, 2011. With respect to Defendants' participation in protracted litigation for the past twenty-four months, Riverbend asserts that since the May 31, 2011 hearing on Defendants' motion to vacate attachment, Defendants have fully engaged in the discovery process by arranging for and taking depositions, demanding and producing documents, and requesting and providing answers to interrogatories. In addition, Riverbend points out that Defendants waited to file the instant motion to compel arbitration until after the parties confected and filed their joint proposed pretrial order

Finally, Riverbend asserts that it has been prejudiced by Defendants' full engagement in the litigation process and delay in seeking to arbitrate. In particular, Riverbend asserts, relying on Republic Insurance Co. v. PAICO Receivables, L.L.C., 383 F.3d 341, 346 (5th Cir. 2004), that the following three factors are relevant to the prejudice determination: (1) whether pre-trial activity was related to all of the parties' claims, including those that were conceded to be arbitrable, (2) whether the party opposing arbitration incurred the time and expense of defending against a motion for summary judgment, and (3) whether a party failed to timely assert its right to arbitrate. Riverbend argues that all three of these factors favor a finding that Riverbend will be prejudiced if the Court grants Defendants motion to compel arbitration. As to the first factor, Riverbend asserts that pretrial activity in this case was related to all claims between Riverbend and Defendants, thereby implying that pretrial activity was related to at least some arbitrable claims. With respect to the second factor, Riverbend asserts that although Defendants never forced Riverbend to incur the time and expense associated with defending against a motion for summary judgment, they did require Riverbend to defend its arrest of the *M/V ROYAL STREET* at the hearing held on May 31, 2011. Riverbend contends that this circumstance weighs in favor of finding that compelling arbitration, at this stage of the litigation, would result in

prejudice. With respect to the third factor, Riverbend asserts that Defendants did not timely invoke the arbitration agreement, because, after participating in all aspects of litigation, including filing a counterclaim, holding an in-court hearing, noticing depositions, and confecting the proposed joint pretrial order, for twenty-four months, during which time they never mentioned the arbitration clause in the Security Agreement, Defendants moved to compel arbitration very close to the trial date.

### C. Defendants' Reply

In their reply, Defendants take issue with Riverbend's contentions that arbitration was at the option of the lender and that the parties intended arbitration to be optional in all cases. Defendants contend that the language in the arbitration clause providing that "any disputes, claims, and controversies . . . shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at he time the claim is filed, upon request of Lender," should be interpreted to provide that the use of the American Arbitration Association rules — not arbitration generally — is at the request of the lender. Defendants contend that Riverbend's contention that arbitration was at the option of the lender and intended to be optional in all cases, does not make sense in light of the subsequent language in the arbitration clause providing that "[a]ny disputes, claims, or controversies concerning

16

the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated . . . ." According to Defendants, Louisiana law applies to the interpretation of the arbitration provision. Defendants further contend that under Louisiana law, the arbitration clause must be interpreted in light of the entire provision, not simply the first sentence, and that any ambiguity in the arbitration clause must be construed against the drafter of the Security Agreement, Riverbend. Defendants maintain that if the parties intended that arbitration be optional, the drafter — Riverbend — could have clearly articulated this and avoided using mandatory words such as "any disputes, claims and controversies . . . shall be arbitrated," and "[a]ny disputes, claims, or controversies . . . shall also be arbitrated." Defendants contend that the only type of claim that is clearly exempted from arbitration is a claim by any party seeking equitable relief. Defendants maintain that they filed a counterclaim seeking the dismissal of the arrest of the vessels, which Defendants characterize as a request for equitable relief, but that this "issue" is no longer pending as Riverbend has released the vessels. Defendants assert that their claims that: (1) they did not receive loan proceeds due to illegal loan charges for attorneys fees and closing costs and (2) that the payments Defendants made were not

17

properly credited are "disputes, claims or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right," which must be arbitrated pursuant to the terms of the parties' arbitration agreement.

In response to Riverbend's waiver argument, Defendants point out that while the right to arbitrate a dispute is subject to waiver, the party asserting waiver bears a heavy burden, because there is a strong presumption against finding waiver. Defendants argue that Riverbend cannot meet its burden. Defendants contend that Riverbend "initiated this litigation with the arrest and seizure of defendants's vessels," in response to which Defendants filed a counterclaim "asking that the seizure be dismissed." (Def.'s Reply, Rec. Doc. 63, p. 5) Defendants contend that Riverbend had the right to arrest and seize the Defendants' vessels and that Defendants had the right to file a counterclaim "asking that the seizure be dismissed," because both parties' actions sought equitable relief and were, therefore, permissible under the provision of the arbitration agreement which states that "[n]othing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction." (Def.'s Reply, Rec. Doc. 63, p. 5) Defendants further contend that after "initiat[ing] this litigation with the arrest and seizure of defendants' vessels . . . [Riverbend] then released all vessels and now seeks a money judgment — which is prohibited under the arbitration clause."

(Def.'s Reply, Rec. Doc. 63, p. 5) In addition, Defendants contend that Riverbend cannot show that Defendants have "substantially invoked" the judicial process to obtain any relief that is "prohibited by the arbitration clause," or that permitting arbitration would cause Riverbend prejudice. Defendants appear to reason that Riverbend will not be prejudiced if the Court permits arbitration at this late stage of the proceedings, because Riverbend initially "filed for the arrest and seizure of its collateral — then released the vessels," and is "now seeking to violate the arbitration clause it placed in the contract in question by seeking something other than equitable relief." According to Defendants, by "now seeking" something other than equitable relief, Riverbend is now seeking to violate the arbitration clause that Riverbend placed in the Security Agreement.

## DISCUSSION

As a preliminary matter, the Court declines to address the parties' arguments relative to the proper interpretation and scope of the arbitration clause. Accepting the Defendants' interpretation of the clause as correct for the sake of argument and assuming that Defendants, at one time, had a right pursuant to the arbitration clause in the Security Agreement to compel Riverbend to arbitrate its claim for money damages and Defendants' counterclaim, the Court finds that at this advanced stage of the litigation, Defendants have waived any rights that they may have had to compel arbitration

19

of Riverbend's *in personam* claims for money damages and their counterclaim.

"The right to arbitrate, like all contract rights, is subject to waiver." Nicholas v. KBR, Inc., 565 F.3d 904, 907 (5th Cir. 2009) (citation omitted). The Fifth Circuit has recently given the following synopsis of the law regarding waiver of the right to compel arbitration:

> Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden. To invoke the judicial process, '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.' Further, "a party only invokes the judicial process to the extent it litigates a specific claim that it subsequently seeks to arbitrate . . . In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before we will find that the right to arbitrate has been waived. '[F]or purposes of a waiver of an arbitration agreement: prejudice . . . refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Ultimately, however, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case.

Republic Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 344-46 (5th Cir. 2004) (internal citations and quotations omitted).

In order to analyze the waiver issue in this case, and in particular, the question of whether Defendants have forced Riverbend to litigate the claims that Defendants now claim are

subject to mandatory arbitration, the Court must first disentangle Defendants' arguments, which mischaracterize the procedural history and the parties' claims in this case. First, Defendants make assertions that Riverbend "initiated this litigation with the arrest and seizure of defendant's vessels," in response to which Defendants filed a counterclaim "seeking the dismissal of the arrest of the vessels," or "asking that the seizure be dismissed." They also assert that after "initiat[ing] this litigation with the arrest and seizure of defendants' vessels . . . [Riverbend] then released all vessels and *now* seeks a money judgment," and that Riverbend initially "filed for the arrest and seizure of its collateral – then released the vessels," and is "*now* seeking to violate the arbitration clause it placed in the contract in question by seeking something other than equitable relief." (Def.'s Reply, Rec. Doc. 63, p. 5) (emphasis added) Third, Defendants contend that Riverbend had the right to arrest and seize Defendants' vessels and that Defendants had the right to file a counterclaim "asking that the seizure be dismissed," because both parties actions sought equitable relief, which, Defendants contend, is the only type of claim not subject to mandatory arbitration under the arbitration agreement.

Defendants' assertions as to *how* Riverbend initiated this litigation and *when* Riverbend began seeking a money judgment against Defendants are factually incorrect. First, Riverbend

initiated the instant litigation, on April 14, 2011, as all civil
litigation is initiated, by filing its complaint, not by arresting
and seizing Defendants' vessels. Riverbend filed an an ex parte
consent motion for issuance of warrant of arrest for the vessels
(Rec. Doc. 4) *after* it initiated the instant litigation by filing
its verified complaint. Second, Defendants' implicit assertion that
Riverbend began seeking a money judgment *after* it began its efforts
to seize Defendants' vessels is also factually incorrect.
Riverbend's original verified complaint, which it never amended,
included *both* an *in personam* claim against Defendants seeking a
money judgment in the amount of $2,092,400.00 for unpaid loans and
*in rem* claims against the *M/V ROYAL STREET*, the *M/V CAITLIN*, and
the *M/V FAITH*, seeking to foreclose on the ship mortgages that
provided security for the unpaid loans (Compl, Rec. Doc. 1, pp. 7-
8). Thus, if Riverbend is *now* violating the arbitration agreement
by seeking a money judgment or "something other than equitable
relief,"as Defendants contend,[9] it has been violating the
arbitration agreement since it filed its original complaint seeking
a money judgment against Defendants for the allegedly unpaid loan
balance in the amount $ 2,092,400.00. Thus, Defendants' insinuation
that their failure to file their motion to compel arbitration until
the day before the final pretrial conference should be excused
because Riverbend only recently started violating the arbitration

_____

[9] (Def.'s Reply, Rec. Doc. 63, p. 5)

clause is meritless. Considering Defendants' interpretation of the arbitration clause and the nature of the claims in Riverbend's complaint, Defendants should have moved to compel arbitration immediately after Riverbend filed its complaint, or in their answer and counterclaim. Defendants' delay in doing so is not attributable to any wrongdoing by Riverbend.

Moreover, when Defendants' counterclaim is accurately characterized, it becomes apparent that *Defendants* have also been violating the arbitration agreement, *according to their own interpretation of the arbitration agreement*, *the validity of which the Court assumes for the sake of argument*, since they filed their counterclaim asserting that they are entitled to something other than non-equitable relief, namely reimbursement for any amounts they paid in excess of what they owed Riverbend, without pleading that both Riverbend's *in personam* claims and their counterclaims for reimbursement were subject to mandatory arbitration.[10] Defendants' counterclaim did not, as they contend, seek the "dismissal" of the arrest of the vessels or ask that the seizure be "dismissed." (Counterclaim, Rec. Doc. 24, p. 7-8) In their

---

[10] The Court also notes that it is similarly confused by Defendants' contention that their claims that they did not receive loan proceeds due to illegal loan charges, charges for attorneys fees, and closing costs and that the payments they made were not properly credited constitute "disputes, claims or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right," which must be arbitrated. As far as the Court can tell, Defendants never amended their pleadings to make allegations that they never received loan proceeds due to illegal loan charges, charges for attorneys' fees, and closing costs.

counterclaim, Defendants alleged, among other things, that the entities that handled the closing for Riverbend failed to provide an accounting of the funds disbursed on behalf of Riverbend to Defendants and that Riverbend did not have supporting documentation sufficient to prove that Riverbend actually disbursed monies to Defendants in the sum of $1,650,000.00. (Counterclaim, Rec. Doc. 24, p. 7, ¶¶ 4-7) In addition, Defendants alleged (a) that they repaid all loan proceeds borrowed from Riverbend, thereby extinguishing their debt, and (b) that they were entitled to: (1) cancellation of all promissory notes and mortgages and (2) reimbursement of all amounts that they paid Riverbend in excess of the amounts that were allegedly disbursed to them. (Counterclaim, Rec. Doc. 24, p. 8, ¶¶ 8-10) Thus, Defendants did not take any action with respect to the arrest of the vessels until May 25, 2011 when they filed their motion to vacate the attachment of the *M/V ROYAL STREET* pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Rec. Doc. 26). Thus, because Defendants alleged that they not only repaid the loans, but that they overpaid on the loans and were entitled to reimbursement, they have been violating the arbitration agreement, *as they interpret it*, since the day they filed their counterclaim seeking something other than equitable relief, without simultaneously asserting, as they do now, that both parties' claims for money damages were subject to mandatory arbitration.

24

Having dispensed with this preliminary matter, the Court will now analyze the waiver issue. As to the first inquiry, the Court agrees with Riverbend that Defendants have substantially invoked the judicial process. "To invoke the judicial process, '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" Republic Ins. Co., 383 F.3d at 344 (quoting Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 1999)). Moreover, "in order to invoke the judicial process, a party must have litigated the claim that the party now proposes to arbitrate." Subway Equip. Leasing Corp., 169 F.3d at 329. The term invoke "describe[s] the act of implementing or enforcing the judicial process." Id. Here, Defendants invoked the judicial process with respect to the claims that they now seek to compel Plaintiffs to arbitrate, as well as other claims that are subject to mandatory arbitration under Defendants' interpretation of the arbitration agreement. First, inconsistent with its claimed right to arbitrate, Defendants answered Riverbend's complaint, the entirety of which it now argues is subject to mandatory arbitration, without invoking the arbitration agreement and thereby limiting the issues in the case to whether the parties had agreed to arbitrate the dispute. Defendants also filed a counterclaim seeking monetary relief, which, under Defendants' interpretation of the arbitration agreement, would be subject to mandatory

arbitration, without invoking the arbitration agreement.

In addition, Defendants invoked the judicial process by filing the motion to vacate the attachment of the *M/V ROYAL STREET*, in which, the Court finds, Defendants litigated a dispute concerning the lawfulness or reasonableness of the exercise of Riverbend's rights concerning the collateral for its loans, a type of dispute that Defendants have argued in their reply is subject to mandatory arbitration. In their reply, Defendants attacked Riverbend's argument that arbitration was at the option of the lender and optional based the use of the mandatory term "shall" in the provision in the arbitration agreement stating: "[a]ny disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated . . ." (Def.'s Reply, Rec. Doc. 63, p. 3) Defendants have tried to argue that the filing of the motion to vacate the attachment was permissible under their interpretation of the arbitration agreement by characterizing it as a motion seeking equitable relief. However, typical equitable relief includes injunctions and specific performance, and Defendants sought neither in their motion. The Court finds that the motion is more properly characterized as a dispute about the lawfulness of Riverbend's exercise of its right to seize the Collateral for the loans, a type

of dispute that Defendants concede is arbitrable under the aforementioned provision of the arbitration agreement. The Court elects to treat the motion this way, because in the motion, Defendants contended that vessel was "wrongfully arrested," because Riverbend could not prove that it disbursed $1,650,000.00 to Defendants. Thus, in their motion to vacate the attachment of the *M/V ROYAL STREET*, Defendants were essentially using the same allegations in their counterclaim to dispute the lawfulness of Riverbend's seizure of its collateral,[11] which prompted Riverbend to call several live witnesses to establish the amount of the unpaid balance it sought to recover in its *in personam* claims against Defendants. Notably a great deal of the evidence adduced at the hearing on the motion bears on Riverbend's *in personam* claims against Defendants and Defendants' counterclaims against Riverbend.

In addition, after the hearing on May 31, 2011, Defendants moved to continue the trial twice and fully engaged in the discovery process with respect to Riverbend's *in personam* claim and its counterclaim by arranging and taking depositions, demanding and producing documents, requesting and providing answers to

---

[11] In their counterclaim, Defendants alleged, among other things, that the entities that handled the closing for Riverbend failed to provide an accounting of the funds disbursed on behalf of Riverbend to Defendants and that Riverbend did not have supporting documentation sufficient to prove that Riverbend actually disbursed monies to Defendants in the amount alleged ($1,650,000.00) (Counterclaim, Rec. Doc. 24, p. 7, 4-7). Similarly, in the motion to vacate attachment, Defendants argued that "Riverbend cannot prove it disbursed $1,650,000 to the Defendants," and that "[i]f Riverbend cannot carry its burden . . . the vessels should be released." (Mem. in Support of Mot. to Vacate Attachment, Rec. Doc. 26-1, p. 4)

interrogatories, and participating in the preparation of the parties' joint proposed pretrial order. Based on these facts, the Court finds that Defendants substantially invoked the judicial process with respect to the claims it now seeks to arbitrate.

As to the second inquiry, the Court agrees that Riverbend would suffer prejudice if the Court ordered arbitration at this stage in the proceedings. Republic Ins. Co., 383 F.3d at 346. As the Fifth Circuit has explained, the three factors that are relevant to a prejudice determination are: (1) whether the pretrial activity was related to all of the parties' claims, including those that were arbitrable, (2) whether a party incurred the time and expense of defending against a motion for summary judgment, and (3) whether the party failed to timely assert its right to arbitrate a dispute. Although the failure to demand arbitration alone does not give rise to waiver, it bears on the question of prejudice and affects the burden on the party asserting waiver. Republic Ins. Co., 383 F.3d at 346-47. "[W]here a party fails to demand arbitration . . ., and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Id. at 347.

The Court agrees with Riverbend that all pertinent factors point in favor of a finding that compelling arbitration at this stage would prejudice Riverbend. First, the pretrial activity in

this case was related to all of the parties' claims, including those that Defendants now seek to arbitrate. Second, although Riverbend did not incur the time and expense of defending against a motion for summary judgment, it did incur the time and expense of defending against a motion to vacate the attachment, a situation that the Court finds analogous in this case. To successfully defend against Defendants' motion to vacate attachment, Riverbend, had to call live witnesses to present evidence of the amount of the unpaid loan. In addition, the same reasoning that supports a finding of prejudice where a party moves to compel arbitration after the Court has ruled on a motion for summary judgment or a motion to dismiss supports a finding of prejudice in this case. In In re Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litigation, 864 F. Supp. 2d 451 (E.D. La. 2012), this Court noted that the rationale for denying motions to compel arbitration filed after the district court ruled on a motion to dismiss or motion for summary judgment was preventing a party from ascertaining how a case was proceeding before seeking arbitration. Id. at 457. The Court found that the concern was not present in that case, because, at the time the motion to compel arbitration was filed, the Court had not rendered any ruling on the motion. By contrast, in this case, Defendants did not file their motion to compel arbitration until after they had an opportunity to gauge the Court's reaction to their theory that Riverbend could not prove the amount of the debt absent documents showing the exact amount that Security Title actually advanced to Defendants. The Court denied Defendants' motion to vacate the

attachment of the *M/V ROYAL STREET* stating:

> [W]hile there may be some confusion about the exact
> advances and payments, I find the testimony of Mr. Dazet
> and Mr. Nolan credible, together with the spreadsheets
> from their accountant that they introduced, which seems
> to support that there is an unpaid principal balance of
> $1.595 million . . . So it's clear to me that there is
> still a large unpaid principal balance, and there are
> preferred mortgages involved . . . So I'm going to deny
> the motion to vacate. I think plaintiff Riverbend has
> carried its burden of demonstrating that it is entitled
> to serve a maritime lien, and the vessel seizure will not
> be vacated.

(Hr'g Tr., Rec. Doc. 39, p. 55)

Also, in this case, unlike In re Apple iPhone, the litigation
was in a very advanced stage when Defendants filed their motion to
compel arbitration. Third, Defendants certainly failed to timely
assert any arbitration rights they may have had given that
Defendants filed their motion to compel arbitration nearly two
years after Riverbend filed this action, after the motion deadline
in their latest scheduling order, and only one day before the final
pretrial conference. Considering these circumstances, the Court
finds that Riverbend's position has been prejudiced by Defendants'
nearly two year delay in seeking to compel arbitration.
Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration
and Dismiss or Stay Proceedings **(Rec. Doc. 57)** is **DENIED**.

New Orleans, Louisiana this 13th day of May, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT COURT

30